******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MICHAEL TOMICK *v.* UNITED PARCEL
SERVICE, INC., ET AL.
(SC 19505)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald and Robinson, Js.

*Argued October 13—officially released December 30, 2016\**

*Cassie N. Jameson*, with whom, on the brief, was *Michael D. Colonese*, for the appellant (plaintiff).

*Michael C. Harrington*, with whom were *Jennifer A. Corvo* and, on the brief, *Proloy K. Das* and *Sarah M. Gruber*, for the appellee (named defendant).

*Marc P. Mercier* filed a brief for the Connecticut Employment Lawyers Association as amicus curiae.

*Charles Krich*, principal attorney, and *Michael E. Roberts*, human rights attorney, filed a brief for the Commission on Human Rights and Opportunities as amicus curiae.

*Opinion*

ROBINSON, J. In this certified appeal, we consider whether General Statutes § 46a-104[1] provides for an award of statutory punitive damages as a remedy for discriminatory practices under the Connecticut Fair Employment Practices Act (act), General Statutes § 46a-51 et seq. The plaintiff, Michael Tomick, appeals, upon our grant of his petition for certification,[2] from the judgment of the Appellate Court affirming the trial court's decision to set aside a jury award of $500,000 in statutory punitive damages against the defendant United Parcel Service, Inc.[3] *Tomick* v. *United Parcel Service, Inc.*, 157 Conn. App. 312, 115 A.3d 1143 (2015) (*Tomick II*). On appeal, the plaintiff claims that the Appellate Court improperly ignored the plain language of § 46a-104 in concluding that the statute does not authorize punitive damages. We disagree with the plaintiff, and conclude that § 46a-104 does not provide for an award of punitive damages. Accordingly, we affirm the judgment of the Appellate Court.

The record and the Appellate Court opinion reveal the following facts and procedural history. The plaintiff had been employed by the defendant as a driver. After the defendant terminated the plaintiff's employment,[4] the plaintiff filed a seven count complaint against the defendant alleging, inter alia, disability discrimination in violation of General Statutes § 46a-60 (a) (1).[5] Id., 320. Following a jury trial, a jury returned a verdict in favor of the plaintiff, awarding him, inter alia, $500,000 in statutory punitive damages. Id., 321. On July 19, 2010, the defendant moved to set aside the verdict and the award of punitive damages. Id. The trial court denied the motion to set aside the verdict, but granted the motion to set aside the award of punitive damages. Id.

Both parties appealed from the judgment of the trial court. See generally *Tomick* v. *United Parcel Service, Inc.*, 135 Conn. App. 589, 43 A.3d 722 (*Tomick I*), cert. denied, 305 Conn. 920, 47 A.3d 389 (2012). After a remand to the trial court; see id., 613;[6] the Appellate Court considered the plaintiff's claim that the trial court improperly determined that § 46a-104 does not authorize an award of punitive damages.[7] *Tomick II*, supra, 157 Conn. App. 333. In its decision, the Appellate Court began by reviewing *Ames* v. *Commissioner of Motor Vehicles*, 267 Conn. 524, 526, 839 A.2d 1250 (2004), in which this court considered whether express statutory language is required to authorize an award of multiple damages. *Tomick II*, supra, 336–41. Although the plaintiff claimed that the discussion in *Ames* regarding punitive damages was "mere dictum," the Appellate Court disagreed and determined that *Ames* was binding authority. Id., 338–41. The Appellate Court read *Ames* as stating a common-law rule that statutory punitive damages require express statutory authority, and applied that reasoning to the question of whether § 46a-

104 authorized punitive damages.[8]

The Appellate Court turned next to statutes related to § 46a-104 and discussed instances in which the legislature specifically provided for punitive damages, in contrast to the plain language of § 46a-104. Id., 341. On the basis of these statutes, the Appellate Court observed that the legislature knows how to provide for statutory punitive damages, when it wishes to do so. Id. Ultimately, the Appellate Court concluded that, "[b]ecause the language of § 46a-104 does not explicitly provide for punitive damages, the plaintiff is not entitled to such relief under the statute." Id. Thus, the Appellate Court held that the trial court did not abuse its discretion in setting aside the $500,000 statutory punitive damages award. Id. This certified appeal followed. See footnote 2 of this opinion.

On appeal, the plaintiff claims that § 46a-104 is plain and unambiguous, because the phrase "legal and equitable relief," as modified by the phrase "including, but not limited to," authorizes all forms of legal and equitable relief, including punitive damages. The plaintiff further contends that the legislature included language that specifically precludes punitive damage awards in other statutes, which undercuts the Appellate Court's conclusion that the legislature intended not to allow awards of punitive damages pursuant to § 46a-104, which is silent on that point. With respect to *Ames* v. *Commissioner of Motor Vehicles*, supra, 267 Conn. 524, the plaintiff claims that its holding is limited to General Statutes (Rev. to 2003) § 14-52,[9] and that it cannot be read to establish a bright line rule requiring the legislature to expressly authorize punitive damages every time it intends to make statutory punitive damages available. Finally, the plaintiff contends that his interpretation of § 46a-104 allowing for awards of punitive damages is consistent with the remedial purpose of the act to afford relief to complainants and prevent future discrimination.

In response, the defendant relies on *Ames* v. *Commissioner of Motor Vehicles*, supra, 267 Conn. 536, for the proposition that, under Connecticut common law, statutory punitive damages must be authorized expressly by the legislature, and because § 46a-104 does not provide such express authorization, it therefore does not permit awards of statutory punitive damages as a form of relief. The defendant compares § 46a-104 to other related human rights statutes in which the legislature specifically provided for punitive damages, to argue that the plaintiff's interpretation of § 46a-104 would render superfluous language in these other statutes, contravening the well established canon of statutory construction that assumes all statutory language is meaningful. The defendant also highlights the legislative history of § 46a-104, observing that its stated purpose was to address the backlog of cases within the Commission on Human

Rights and Opportunities (commission), and that the topic of punitive damages under the act was never debated. Finally, the defendant contends that punitive damage awards are not necessary to accomplish the remedial purpose of the act, in light of other significant relief that may be awarded under the statute. We agree with the defendant, and conclude that punitive damages are not an available remedy under § 46a-104.[10]

The issue of whether § 46a-104 allows an award of punitive damages as a remedy presents a question of statutory construction over which we exercise plenary review.[11] *Gonzalez* v. *O & G Industries, Inc.*, 322 Conn. 291, 302, 140 A.3d 950 (2016). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) Id., 302–303. Significantly, "our case law is clear that ambiguity exists only if the statutory language at issue is susceptible to more than one plausible interpretation." *State* v. *Orr*, 291 Conn. 642, 654, 969 A.2d 750 (2009).

In accordance with § 1-2z, we begin our analysis with the text of the statute. Section 46a-104 provides the following: "The court may grant a complainant in an action brought in accordance with section 46a-100 *such legal and equitable relief* which it deems appropriate *including, but not limited to*, temporary or permanent injunctive relief, attorney's fees and court costs. The amount of attorney's fees allowed shall not be contingent upon the amount of damages requested by or awarded to the complainant." (Emphasis added.) Although the defendant agrees that this language is expansive, it argues that the phrase "including, but not limited to" does not implicitly include relief for which express authorization otherwise is required. The plaintiff, however, contends that the term "legal . . . relief" includes punitive damages, and so textually, § 46a-104

provides for punitive damages. We conclude that both interpretations are plausible, rendering § 46a-104 ambiguous.

Neither § 46a-104, the act, nor related human rights statutes define either term as used in § 46a-104. General Statutes § 1-1 (a) provides in relevant part: "In the construction of the statutes . . . technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly." As such, we look to the common law to define the terms. See *Pacific Ins. Co., Ltd.* v. *Champion Steel, LLC*, 323 Conn. 254, 265, 146 A.3d 975 (2016) ("[i]t is axiomatic that the legislature is presumed to be aware of the common law when it enacts statutes").

Reading the phrase "including, but not limited to," as expansive; see *Lusa* v. *Grunberg*, 101 Conn. App. 739, 757, 923 A.2d 795 (2007); and in conjunction with "legal . . . relief," which is defined as money damages; see *Mertens* v. *Hewitt Associates*, 508 U.S. 248, 255, 113 S. Ct. 2063, 124 L. Ed. 2d 161 (1993); the plaintiff's reading of § 46a-104 that it provides for punitive damages is reasonable. Additionally, the legislature has been inconsistent throughout the General Statutes, in that some statutes expressly provide for awards of punitive damages; see, e.g., General Statutes (Supp. 2016) § 46a-83 (g) (2); and others appear to expressly prohibit punitive damages. See, e.g., General Statutes § 47-212 (a). Section 46a-104, however, is silent with respect to punitive damages. Accordingly, we therefore look to the common law, other related statutes, and the circumstances surrounding its enactment for further guidance.

We next consider case law with respect to statutory interpretation concerning statutory punitive damage awards in Connecticut, beginning with our decision in *Ames* v. *Commissioner of Motor Vehicles*, supra, 267 Conn. 524. In *Ames*, we considered whether an award of attorney's fees and punitive damages fell outside the indemnification provisions of General Statutes (Rev. to 2003) § 14-52 (b).[12] Id., 526. In *Ames*, a plaintiff sought damages for the unlawful repossession of a vehicle under General Statutes § 52-264, as well as attorney's fees under the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. Id., 526–27. The defendant failed to appear, and the trial court rendered a default judgment, awarding treble damages and attorney's fees to the plaintiff. Id. The defendant, however, went out of business prior to satisfying the judgment. Id., 527. As a result, the Commissioner of Motor Vehicles invoked the surety bond posted by the defendant pursuant to § 14-52. Id. The plaintiff subsequently claimed that the surety bond should have been used to satisfy the judgment, including the punitive damages and attorney's fees. Id., 527–28.

First, as to the award for attorney's fees, we held

that attorney's fees were not compensable under § 14-52, because allowing such damages would be in derogation of the common-law American Rule that, absent a contractual or statutory exception, attorney's fees are not allowed to the successful party. Id., 532–33. We observed that § 14-52 was devoid of any express language authorizing an award of attorney's fees, and as such, we declined to imply attorney's fees under the statute. Id., 533. Next, we extended that attorney's fee reasoning to our analysis of whether the plaintiff was entitled to recover punitive damages under § 14-52. Id., 536. Citing both *DeMilo* v. *West Haven*, 189 Conn. 671, 675–76, 458 A.2d 362 (1983), and *Alaimo* v. *Royer*, 188 Conn. 36, 43, 448 A.2d 207 (1982), we concluded that "[a]n award of multiple damages . . . is an extraordinary remedy that is available only when the legislature expressly provides for such damages by statute. . . . Accordingly, as with attorney's fees, we require explicit statutory language to support an award of punitive damages. Put simply, just as the legislature knows how to authorize an award of attorney's fees when it wishes to do so . . . it also knows how to authorize an award of punitive damages." (Citations omitted.) *Ames* v. *Commissioner of Motor Vehicles*, supra, 267 Conn. 536. Thus, because § 14-52 did not include express statutory language to support an award of punitive damages, we declined to imply such damages. Id.

In applying the statutory interpretation approach utilized in *Ames*, we note that on its face, § 46a-104 does not expressly authorize an award of punitive damages, but rather, authorizes "legal and equitable relief . . . ."[13] To construe this language as encompassing punitive damages without expressly stating as much, as the plaintiff advocates, would be inconsistent with our approach to the statutory construction within *Ames*, in which we required, at least as a default rule, express statutory authorization for statutory punitive damages as a form of relief.[14]

Further, there is no extratextual evidence that would cause us to consider departing from the approach to statutory interpretation embodied in *Ames*. With respect to the legislative intent, the plaintiff contends that, because the act is the state counterpart to Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq., § 46a-104 is remedial in nature, and as such, punitive damages are allowable to further the act's broader purpose of ending discrimination; however, a review of the legislative history behind § 46a-104 reveals no legislative intent to allow for punitive damages as a remedy for employment discrimination. Rather, the stated intent of the provision was to help alleviate the backlog of cases at the commission. See 34 H.R. Proc., Pt. 23, 1991 Sess., p. 8909, remarks of Representative Joseph Adamo ("[T]he commission is very much backed up and has thousands of cases pending before it. What this basically does is if there's a case that needs—

someone feels should have immediate action, it would give them the opportunity [to] seek a release from the [commission] and go directly to the court for the appropriate action."). Thus, it appears that the legislature deemed the remedies expressly authorized in the act, including back pay, compensatory damages, attorney's fees, and costs, to be sufficient to carry out its remedial purpose.[15]

Reading § 46a-104 in conjunction with related human rights statutes further supports declining to imply authority to award punitive damages in this case. Specifically, the legislature expressly authorized punitive damages in other human rights statutes, but did not do so within § 46a-104, and, thus, reading § 46a-104 to allow punitive damages despite the fact that it does not explicitly authorize such damages would render those express authorizations for punitive damages superfluous. "It is a basic tenet of statutory construction that the legislature [does] not intend to enact meaningless provisions. . . . Because [e]very word and phrase [of a statute] is presumed to have meaning . . . [a statute] must be construed, if possible, such that no clause, sentence or word is superfluous, void or insignificant." (Internal quotation marks omitted.) *Neighborhood Assn., Inc.* v. *Limberger*, 321 Conn. 29, 38–39, 136 A.3d 581 (2016). A reading of the act and related statutes reveals a multitude of instances in which the legislature expressly provided for punitive damages as a form of relief.[16] General Statutes (Supp. 2016) § 46a-89 (b) (1), for example, not only provides a procedure that the commission may follow to seek punitive damages in a civil case, but also expressly authorizes punitive damages awards for violations of General Statutes § 46a-64 (discriminatory public accommodations), General Statutes § 46a-64c (discriminatory housing practices), General Statutes § 46a-81d (sexual orientation public accommodations discrimination), and General Statutes § 46a-81e (sexual orientation housing discrimination).[17] The legislature did not, however, include such language authorizing awards of punitive damages in § 46a-104. See *McCoy* v. *Commissioner of Public Safety*, 300 Conn. 144, 155, 12 A.3d 948 (2011) ("[o]ur case law is clear . . . that when the legislature chooses to act, it is presumed to know how to draft legislation consistent with its intent and to know of all other existing statutes and the effect that its action or nonaction will have upon any one of them" [internal quotation marks omitted]).

We acknowledge the plaintiff's argument that the legislature did not expressly exclude punitive damages in the act or in related human rights statutes, including § 46a-104.[18] The other statutes upon which the plaintiff relies are inconsistent with those more closely related to § 46a-104. Thus, in the human rights context, the legislature expressly authorized punitive damages when it intended for that type of relief to be afforded. To read § 46a-104 to allow for awards of punitive damages

when the statute does not expressly authorize those damages would be inconsistent with the rest of the act and related statutes.

Finally, the plaintiff's reliance on Title VII and other federal laws is unavailing. We have recognized that our legislature intended, in general, to make the act complement the provisions of Title VII. See, e.g., *Commission on Human Rights & Opportunities* v. *Echo Hose Ambulance*, 322 Conn. 154, 160, 140 A.3d 190 (2016). Prior to the enactment of the Civil Rights Act of 1991, parties claiming employment discrimination under Title VII were not entitled to compensatory or punitive damages. See *Landgraf* v. *USI Film Products*, 511 U.S. 244, 252, 114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994). Congress, however, specifically amended Title VII by enacting the Civil Rights Act of 1991 to provide for compensatory *and* punitive damages.[19] Id., 247. Despite Congress taking affirmative steps to provide expressly for punitive damages, the Connecticut legislature has not yet followed suit. Had the legislature intended for § 46a-104 to provide for statutory punitive damages, it could have amended the state statute to reflect the changes to its federal counterpart, and remains free to do so.

Accordingly, in light of *Ames* v. *Commissioner of Motor Vehicles*, supra, 267 Conn. 524, and a close reading of the text of § 46a-104 in relation to other related human rights statutes, we conclude that § 46a-104 does not authorize an award of punitive damages in employment discrimination cases. Accordingly, the Appellate Court properly upheld the trial court's decision to set aside the jury's award of punitive damages.

The judgment of the Appellate Court is affirmed.

In this opinion ROGERS, C. J., and ZARELLA and EVELEIGH, Js., concurred.

* December 30, 2016, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] General Statutes § 46a-104 provides: "The court may grant a complainant in an action brought in accordance with section 46a-100 such legal and equitable relief which it deems appropriate including, but not limited to, temporary or permanent injunctive relief, attorney's fees and court costs. The amount of attorney's fees allowed shall not be contingent upon the amount of damages requested by or awarded to the complainant." We note that, although § 46a-104 was amended in 2011; see Public Acts 2011, No. 11-237, § 15; that amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[2] We granted the plaintiff's petition for certification to appeal limited to the following questions: (1) "Did the Appellate Court properly determine that General Statutes § 46a-104 does not authorize the award of punitive damages?"; and (2) "If the answer to the first question is in the negative, does the award of punitive damages in § 46a-104 fall within the province of the court or the jury?" *Tomick* v. *United Parcel Service, Inc.*, 317 Conn. 916, 117 A.3d 854 (2015).

[3] We note that Kevin Trudelle, a business manager for United Parcel Service, Inc., was also named as a defendant in the present action. This certified appeal, however, pertains solely to the plaintiff's claim for punitive damages against United Parcel Services, Inc. Accordingly, in the interest of simplicity, we refer to United Parcel Services, Inc., as the defendant.

[4] For a detailed recitation of the facts underlying this appeal, see *Tomick II*, supra, 157 Conn. App. 315–20.

[5] The plaintiff also alleged negligent infliction of emotional distress against

his supervisor, Kevin Trudelle; see footnote 3 of this opinion; intentional infliction of emotional distress against the defendant and Trudelle, and violations of General Statutes § 31-51x against the defendant and Trudelle for requiring him to submit to a urinalysis drug test without reasonable suspicion. *Tomick II*, supra, 157 Conn. App. 320. The defendant removed the case to federal District Court on October 20, 2006. Id. After granting motions to dismiss as to counts four, five, and seven of the operative complaint, the federal District Court remanded the remaining counts to the trial court. Id.

[6] In *Tomick I*, the defendant claimed, inter alia, that the trial court had improperly denied its motion for a directed verdict because the plaintiff had failed to establish a prima facie case of disability discrimination pursuant to § 46a-60. *Tomick I*, supra, 135 Conn. App. 609–10. The defendant argued specifically that the court improperly determined the relevant date for ascertaining whether a person is qualified to perform the essential functions of his job. Id., 610. As to that issue, the Appellate Court agreed with the defendant's argument, but concluded that the record did not set forth the analytical framework that the trial court had utilized in determining whether the plaintiff had set forth his prima facie case. Id., 612. As such, the Appellate Court remanded the case for further proceedings to determine whether the plaintiff would prevail under the correct legal standard. Id., 613. Because of the remand in *Tomick I*, the Appellate Court did not reach the plaintiff's claim that the trial court had improperly set aside the award of punitive damages. Id., 630 n.31. On remand, the trial court, determined that the plaintiff had established a prima facie case for disability discrimination and thus, denied the defendant's motion for a directed verdict.

[7] The defendant appealed from the trial court's denial of its motion for a directed verdict on the ground that the plaintiff had failed to establish a prima facie case. *Tomick II*, supra, 157 Conn. App. 324. The Appellate Court upheld the trial court's denial of the defendant's motion for a directed verdict. Id. We note that this issue is not before us in this certified appeal, and we need not consider it further.

[8] The Appellate Court also assumed, without deciding, that the language of § 46a-104 was sufficiently broad to authorize punitive damages, but concluded, nevertheless, that to read the statute in such a way would be contrary to our established law that restricts common-law punitive damages to a single recovery of litigation expenses, as permitting such punitive damages would allow the plaintiff to double his recovery, because the statute already expressly allowed for an award of attorney's fees and costs. *Tomick II*, supra, 157 Conn. App. 338–39. As such, the Appellate Court determined that its review of the plain language in § 46a-104 did not reveal an intent to provide for multiple recovery of litigation costs. Id., 340.

For the purposes of this certified appeal, we treat the jury's punitive damages award as one for statutory punitive damages awarded pursuant to § 46a-104 because the trial court treated them as such, and the parties consistently have analyzed them as such under § 46a-104.

[9] We note that, although § 14-52 has been amended by the legislature several times since the Appellate Court's decision in *Ames*; see, e.g., Public Acts 2010, No. 10-110, § 12; those amendments are not relevant to the present appeal. Hereinafter, all references to § 14-52 are to the version appearing in the 2003 revision of the general statutes.

[10] Because we hold that § 46a-104 does not provide for punitive damages, we need not reach the second certified issue of whether awarding punitive damages pursuant to § 46a-104 falls within the province of the court or the jury. See footnote 2 of this opinion.

[11] We note that prior to the Appellate Court's decision in *Tomick II*, our trial courts were divided on the question of whether § 46a-104 provides for awards of statutory punitive damages. Compare, e.g., *Resnick* v. *United Public Service Employees Union*, Superior Court, judicial district of Middlesex, Docket No. CV-13-60009166-S (May 8, 2014) (§ 46a-104 does not provide for punitive damages), with *Tracy* v. *Smith Ins., Inc.*, Superior Court, judicial district of New London, Docket No. CV-14-6020529-S (November 4, 2014) (59 Conn. L. Rptr. 254, 257) (§ 46a-104 provides for punitive damages).

[12] General Statutes (Rev. to 2003) § 14-52 provides in relevant part: "(a) No person, firm or corporation may engage in the business of the buying, selling, offering for sale or brokerage of any motor vehicle or the repairing of any motor vehicle without having been issued either a new car dealer's, a used car dealer's, a repairer's or a limited repairer's license. . . .

"(b) . . . (2) . . . [E]ach applicant for a new car dealer's or a used car dealer's license shall furnish a surety bond in the amount of twenty thousand dollars. . . .

"(4) Each such bond . . . shall be conditioned upon the applicant or

licensee complying with the provisions of any state or federal law or regulation relating to the conduct of such business and provided as indemnity for any loss sustained by any person by reason of any acts of the licensee constituting grounds for suspension or revocation of the license or such licensee going out of business. Such bond shall be executed in the name of the state of Connecticut for the benefit of any aggrieved party, but the penalty of the bond shall not be invoked except upon order of the [Commissioner of Motor Vehicles] after a hearing held before said commissioner in accordance with the provisions of chapter 54. . . ."

[13] Consistent with *Ames* v. *Commissioner of Motor Vehicles*, supra, 267 Conn. 536, our research has not revealed a single instance in which this court or the Appellate Court allowed an award of punitive damages based on a statute that did not expressly provide for such damages.

[14] The defendant contends that *Ames* should be read for the common-law proposition that statutory punitive damages must be explicitly authorized. To the contrary, the plaintiff contends that the Appellate Court's interpretation of *Ames* is improper and that it cannot be read to establish a bright line rule requiring the legislature to use the words " 'punitive damages' " whenever it intends to make punitive damages available, as the holding is limited to an interpretation of § 14-52. Although we do not view *Ames* as establishing a bright line rule foreclosing *any* award for statutory punitive damages in the absence of express statutory authority, the approach followed in *Ames* is a persuasive baseline position. As such, in the absence of express authority for such damages or significant extratextual evidence that would cause us to depart from our default approach in *Ames*, we decline to imply punitive damages as a remedy under § 46a-104.

[15] Additionally, in Connecticut, common-law punitive damages are limited to attorney's fees and costs. See *Hylton* v. *Gunter*, 313 Conn. 472, 484, 97 A.3d 970 (2014). It is also well settled that one cannot be awarded both common-law and statutory punitive damages. 22 Am. Jur. 2d 594, Damages § 632 (2013) ("However, where the plaintiff asserts a common-law, rather than the statutory, cause of action, he or she may recover punitive damages instead of the multiple damages mandated by statute. . . . In effect, a plaintiff must elect whether to pursue the statutory remedy or the common-law one." [Footnote omitted.]). As such, by allowing for awards of attorney's fees and costs, § 46a-104 already in effect provides common-law punitive damages as a remedy, and for the plaintiff to recover more in damages, the legislature would have had to expressly said as much.

[16] There are numerous other examples of human rights statutes allowing punitive damage awards. See General Statutes (Supp. 2016) § 46a-83 (g) (2) (describing discriminatory practice complaint procedure, which provides in relevant part that "[i]f the Attorney General or a commission legal counsel believes that injunctive relief, *punitive damages* or a civil penalty would be appropriate, *such relief, damages or penalty may also be sought*" [emphasis added]); General Statutes (Supp. 2016) § 46a-89 (b) (2) (C) (providing that when commission believes that punitive damages, civil penalty, or injunctive relief is appropriate in response to complaint alleging discriminatory housing or public accommodations practices, commission may bring petition in Superior Court, and that petition shall seek "an award of punitive damages payable to the complainant, not to exceed fifty thousand dollars"); General Statutes (Supp. 2016) § 46a-98 (c) (providing that creditor who has engaged in discriminatory credit practices and "who fails to comply with any requirement of section 46a-66 or 46a-81f or the regulations adopted pursuant to section 46a-67 *shall be liable to an aggrieved person for punitive damages in an amount not greater than one thousand dollars*, as determined by the court, in addition to any actual damages provided in subsection [b] of this section" [emphasis added]); General Statutes (Supp. 2016) § 46a-98 (d) (describing creditor liability for discriminatory credit practice, which provides that "[a]ny such creditor who fails to comply with any requirement of section 46a-66 or 46a-81f or the regulations adopted pursuant to section 46a-67 *may be liable for punitive damages in the case of a class action in such amount as the court may allow*, provided the total recovery of *punitive damages* shall not exceed the lesser of five thousand dollars or one per cent of the net worth of the creditor" [emphasis added]).

[17] General Statutes (Supp. 2016) § 46a-89 (b) (1), describing the filing of a petition for civil action alleging discriminatory housing or public accommodation practices, which provides: "Whenever a complaint filed pursuant to section 46a-82 alleges a violation of section 46a-64, 46a-64c, 46a-81d or 46a-81e, and the commission believes that injunctive relief is required *or that the imposition of punitive damages or a civil penalty would be appropriate,*

*the commission may bring a petition in the superior court for the judicial district* in which the discriminatory practice which is the subject of the complaint occurred or the judicial district in which the respondent resides." (Emphasis added.)

[18] The plaintiff cites to several statutes in which the legislature precluded punitive damage awards. For example, General Statutes § 47-212 (a), a statute within the Common Interest Ownership Act, provides: "The remedies provided by this chapter shall be liberally administered to the end that the aggrieved party is put in as good a position as if the other party had fully performed, *provided consequential, special or punitive damages may not be awarded except as specifically provided in this chapter or by other rule of law.*" (Emphasis added.) The plaintiff contends that this express exclusion of punitive damages undercuts the Appellate Court's holding that the silence of § 46a-104 implicitly excludes punitive damages. Consistent with *Ames* v. *Commissioner of Motor Vehicles*, supra, 267 Conn. 536, however, § 47-212 (a) bolsters our conclusion that had the legislature intended for punitive damages to be a remedy, it would have done so expressly in § 46a-104. Section 47-212 (a) states as much, by providing that "*except as specifically provided,*" punitive damages are not a remedy. (Emphasis added.) Put another way, that statute suggests that punitive damages are only an available remedy if expressly authorized by the legislature or some other provision.

The plaintiff also cites to General Statutes § 31-51m as an example of the legislature's express preclusion of punitive damages. General Statutes § 31-51m (c) provides: "Any employee who is discharged, disciplined or otherwise penalized by his employer in violation of the provisions of subsection (b) may, after exhausting all available administrative remedies, bring a civil action, within ninety days of the date of the final administrative determination or within ninety days of such violation, whichever is later, in the superior court for the judicial district where the violation is alleged to have occurred or where the employer has its principal office, *for the reinstatement of his previous job, payment of back wages and reestablishment of employee benefits to which he would have otherwise been entitled if such violation had not occurred. An employee's recovery from any such action shall be limited to such items, provided the court may allow to the prevailing party his costs, together with reasonable attorney's fees to be taxed by the court.* Any employee found to have knowingly made a false report shall be subject to disciplinary action by his employer up to and including dismissal." (Emphasis added.) A reading of this statute demonstrates that the legislature limited remedies to those included on the list, but did not explicitly preclude punitive damages, by name, as a form of relief, as the plaintiff suggests.

[19] Title 42 of the United States Code, § 1981a (a) (1), provides: "In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 [42 U.S.C. 2000e-5, 2000e-16] against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) prohibited under section 703, 704, or 717 of [that] [a]ct [42 U.S.C. 2000e-2, 2000e-3, 2000e-16], and provided that the complaining party cannot recover under section 1981 of this title, the complaining party *may recover compensatory and punitive damages* as allowed in subsection (b), in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent." (Emphasis added.)