CLAUDETTE TRACEY *v.* ROBERT TRACEY
(AC 26829)

Flynn, C. J., and Rogers and Hennessy, Js.

Argued May 22—officially released August 15, 2006

*Vincent Federico, Jr.*, for the appellant (defendant).

*Noah Eisenhandler*, for the appellee (plaintiff).

*Opinion*

HENNESSY, J. The defendant, Robert Tracey, appeals from the judgment of the trial court dissolving his marriage to the plaintiff, Claudette Tracey. On appeal, the defendant claims that the court improperly (1) applied the child support guidelines, (2) determined his earning capacity and (3) applied the statutory criteria of General Statutes § 46b-81 when dividing marital assets. We reverse in part the judgment of the trial court.

The court dissolved the parties' fourteen year marriage on July 18, 2005. The court ordered joint legal custody of the parties' two minor children and primary physical residence with the plaintiff. The defendant was ordered to pay child support in the amount of $218 per week plus a percentage of unreimbursed health care expenses for the children. Additionally, the defendant was ordered to pay alimony in the amount of $60 per week. The court also divided marital assets, constituting, in substantial part, several real properties and the defendant's 401 (k) plan.

"The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented." (Internal quotation marks omitted.) *Prial* v. *Prial*, 67 Conn. App. 7, 9–10, 787 A.2d 50 (2001). "It is within the province of the trial court to find facts and draw proper inferences from the evidence presented." (Internal quotation marks omitted.) *Werblood* v. *Birnbach*, 41 Conn. App. 728, 730, 678 A.2d 1 (1996). "In

determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Prial* v. *Prial*, supra, 10. "[T]o conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did." (Internal quotation marks omitted.) *Clark* v. *Clark*, 66 Conn. App. 657, 668, 785 A.2d 1162, cert. denied, 259 Conn. 901, 789 A.2d 990 (2001). "Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review." (Internal quotation marks omitted.) *Prial* v. *Prial*, supra, 10. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Berry* v. *Berry*, 88 Conn. App. 674, 679, 870 A.2d 1161 (2005).

I

The defendant first claims that the court improperly applied the child support guidelines. He argues that the court improperly (1) deviated from the guidelines and (2) calculated the amount due under the child support guidelines on the basis of facts that are not reflected in the record.

The following additional facts inform our resolution of the claim. In its oral decision, the court stated that it "has done child support guidelines based on [the defendant's] current earnings on his financial affidavit and [the plaintiff's], and the court considered all allowable earnings. And as a result of the same, the court finds that the child support that would be indicated by the child support guidelines is $217.75 per week, which is rounded up to $218 per week with a 46/64 split as

indicated shortly in these orders on unreimbursed health expenditures."

## A

The defendant argues that the court improperly deviated from the child support guidelines without making a specific finding on the record that deviation would be equitable or appropriate under the circumstances. We agree.

General Statutes § 46b-215b requires the court to consider and to apply the child support and arrearage guidelines (guidelines) to all determinations of child support amounts.[1] Section 46b-215a-2a of the guidelines, as embodied in the Regulations of Connecticut State Agencies, provides procedures for using the child support worksheet (worksheet) to determine the presumptive child support payments and the health care coverage contributions. The presumptive child support payments and health care coverage contributions indicated by the guidelines should be identical to the court's orders for such payments and contributions by the noncustodial parent to the custodial parent pursuant to § 46b-215a-3 of the guidelines unless application of the guidelines is inequitable or inappropriate under the circumstances. See *Unkelbach* v. *McNary*, 244 Conn. 350, 372, 710 A.2d 717 (1998). If the court deviates from the presumptive support amount, it must determine and state on the record (1) the presumptive amount of the weekly support order recommended by the guidelines and (2) specific findings that application of the presumptive support guidelines is inequitable or inappropriate. General Statutes § 46b-215b; *Unkelbach* v. *McNary*, supra, 372. The Supreme Court has determined that stating these findings on the record will facilitate appellate

---

[1] This case was decided in July, 2005, prior to the issuance of the current child support guidelines; therefore all references to the guidelines are to the 1999 version.

review. *Favrow* v. *Vargas*, 231 Conn. 1, 29, 647 A.2d 731 (1994).

Here, the court properly considered and applied the guidelines when finding the presumptive child support payments and did not deviate from that presumptive amount in the child support orders. When finding the presumptive health care coverage contribution, however, the court improperly stated the presumptive contribution according to the guidelines and deviated from the guidelines without supporting its deviation on the record.

The court based the child support payments on the presumptive calculations of the guidelines, stating in its oral decision that it "has done child support guidelines based on [the defendant's] current earnings on his financial affidavit . . . . And as a result of the same, the court finds that the child support that would be indicated by the child support guidelines is $217.75 per week, which is rounded to $218 per week . . . ." Because the court did not deviate from the guidelines, it is not necessary for the court to give reasons for deviation.

The court's calculations of the parties' health care coverage contributions constitutes an abuse of discretion. The court ordered the defendant to pay 46 percent of unreimbursed health care expenses and the plaintiff to pay 64 percent.[2] The split for health care expenditures is mathematically impossible, totaling 110 percent.

The court also deviated from the presumptive health care coverage contribution without a specific finding

---

[2] Presumptive health care contributions are based on parents' net disposable income, calculated on the worksheet according to § 46b-215a-2b (g) (3) of the guidelines. "The order for payment of unreimbursed medical expenses shall equal each parent's decimal share of such expenses that exceed one hundred dollars per child per calendar year." Regs., Conn. State Agencies § 46b-215a-2b (g) (3) (D).

on the record that application of the guidelines would have been inequitable or inappropriate under the circumstances. The court stated that it was "deviating from the guidelines by not requiring [the plaintiff] to pay the first $100 per year per child." The court did not provide support for this deviation with a specific finding on the record.

## B

The defendant next argues that the court improperly based its child support guideline calculations on an amount of net income that is not supported by the facts. We decline to review this claim because the record is inadequate.

"It is the appellant's burden to supply us with a record adequate to provide a proper review, and, [w]here the factual basis of the court's decision is unclear, proper utilization of the motion for articulation serves to dispel any such ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal. . . . Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court, either on its own or in response to a proper motion for articulation, any decision made by us . . . would be entirely speculative." (Citation omitted; internal quotation marks omitted.) *Lowe* v. *Lowe*, 47 Conn. App. 354, 362, 704 A.2d 236 (1997).

"In *Favrow* v. *Vargas*, [supra, 231 Conn. 29], our Supreme Court stressed adherence by the trial court to observe the procedures set out in the child support guidelines to facilitate appellate review. Recently, in *Bee* v. *Bee*, 79 Conn. App. 783, 787–88, 831 A.2d 833, cert. denied, 266 Conn. 932, 837 A.2d 805 (2003), we

concluded that a party who fails to submit a child support guidelines worksheet is precluded from complaining of the alleged failure of the trial court to comply with the guidelines and that we will not review such a claim." *Kunajukr* v. *Kunajukr*, 83 Conn. App. 478, 485, 850 A.2d 227, cert. denied, 271 Conn. 903, 859 A.2d 562 (2004).

Here, it was the defendant's burden, as the appellant, to file a motion for articulation that would clarify the court's basis for and reasoning behind its calculations. See Practice Book § 66-5; *Lowe* v. *Lowe*, supra, 47 Conn. App. 362. Without such an articulation, it is unclear how the court calculated net income and what amount of net income was used to calculate the presumptive support under the guidelines. The court stated that it had "done child support guidelines based on [the defendant's] current earnings on his financial affidavit . . . ." Our review is complicated by the existence of two financial affidavits for the defendant. The court did not specify which financial affidavit it used or what amount it had determined as the defendant's current earnings. Additionally, neither party included the guidelines worksheet in the record, which details the steps of the support calculations and earnings amounts on which the calculations were based.[3] The court also did

[3] It is worth noting, however, that the defendant's income was an issue of fact that was the subject of both documentary evidence and testimony during the trial. The defendant filed two copies of the first page of his financial affidavit. On one, his net weekly income was listed as $688.50. The other affidavit is almost entirely incomplete, listing $150 as gross weekly wage and $120 as gross weekly income from other sources, but all boxes indicating net weekly wage or income are blank. The defendant also testified about his income and expenses from both his business and rental properties at some length and with little clarity. Counsel, at oral argument, noted that the trial court "probably" used the financial affidavit on page 11 of the record, which indicates that the defendant's net income is $688.50 per week. Reverse calculations of the guidelines may support the use of approximately $688 as defendant's net income; however, this court is not a finder of fact. Just as the Supreme Court in *Favrow* declined to calculate the presumptive support order in the guidelines, this court declines to reverse the calculations to find the net income used by the trial court.

not make a factual determination of the defendant's net or gross income on the record.

The record is inadequate to permit review of this claim, and the defendant failed to file a motion for articulation. Therefore, we decline to review this claim.

## II

The defendant next claims that the court improperly determined his earning capacity to be $47,000 to $48,000 per year. We disagree.

The court's finding is supported by evidence in the record of the defendant's prior earnings, vocational skills and unwillingness to pursue jobs similar to that from which he had been laid off. As that finding is supported by the evidence and we are not left with the definite and firm conviction that a mistake has been committed, we will not disturb the court's finding.

## III

The defendant next claims that the court abused its discretion in the allocation of marital assets by awarding the plaintiff a one-half interest in his 401 (k) plan. We are not persuaded.

"[T]he purpose of property division is to unscramble the ownership of property, giving to each spouse what is equitably his. *Beede* v. *Beede*, 186 Conn. 191, 195, 440 A.2d 283 (1982)." *Weiman* v. *Weiman*, 188 Conn. 232, 234, 449 A.2d 151 (1982). When assigning the parties' property in a marriage dissolution, § 46b-81 (c) in relevant part requires the court to consider "the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also

consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates." The court has wide latitude in applying those criteria to the particular circumstances of the case, and although the court must consider all the statutory criteria in dividing property in a dissolution action, it does not need to make an express finding as to each criterion. *Lopiano* v. *Lopiano*, 247 Conn. 356, 374–75, 752 A.2d 1000 (1998).

Here, the court considered the criteria listed in § 46b-81 (c). The court's oral decision clearly states that it considered all of the relevant criteria in making its decision and issuing appropriate orders on the basis of the evidence before the court.

The defendant first contends that the court made a mistake of fact that is clearly erroneous when it awarded the plaintiff one-half of the defendant's 401 (k) plan because only a portion of it accrued during the marriage.

"At the time of entering a decree . . . dissolving a marriage . . . the Superior Court may assign to either the husband or wife all or any part of the estate of the other. . . ." General Statutes § 46b-81 (a). "Although it is not improper for the trial court to consider the actual source or ownership of an asset, these are but two factors to be considered in reaching an equitable division in dissolution proceedings. The fact that a particular asset belongs to one spouse may cause the trial court to be predisposed to awarding it to its named owner; however, if the marital estate is otherwise insufficient to maintain the other spouse, the court must be able to exercise its discretion in arriving at an equitable distribution, taking into consideration the needs and assets of both parties. . . . Unlike provisions in effect in many other jurisdictions that limit distributions to property based upon how and when it was acquired,

§ 46b-81 does not draw such distinctions." *Lopiano* v. *Lopiano*, supra, 247 Conn. 370–71.

The court considered the statutory criteria on the basis of the evidence in the record and has therefore fulfilled its statutory obligation. The court's decision contains findings of fact relevant to all the factors of § 46b-81 (c), including the acquisition, preservation or appreciation in value of assets. The court stated that "[t]he parties each had assets and had earnings and a life of their own before they ultimately married in 1991." The court did not and was not required to make an express finding regarding the contribution of the parties to the acquisition, preservation or appreciation in value of the 401 (k). The court was within its discretion, as part of the overall equitable distribution of assets, to divide the defendant's 401 (k) equally between the parties even if part of it had accrued prior to the marriage.

Next, the defendant argues that the division of the 401 (k) plan was improper because it resulted in an unequal division of assets. This argument is unpersuasive because "[a]n award of a larger percent of the total marital assets to one party is not a per se abuse of discretion." *Siracusa* v. *Siracusa*, 30 Conn. App. 560, 567, 621 A.2d 309 (1993). Here, the court stated that it considered the criteria set forth in § 46b-81. Simply because this asset was treated differently from some of the other assets does not mean the court abused its discretion, especially in light of the court's clear statement that it had considered the statutory criteria.

"In reviewing the trial court's decision . . . we are cognizant that [t]he issues involving financial orders are entirely interwoven. The rendering of judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other." (Internal quotation marks omitted.) *Cordone*

v. *Cordone*, 51 Conn. App. 530, 532–33, 752 A.2d 1082 (1999).

The judgment is reversed as to the financial orders only and the case remanded for a rehearing on and consideration of the issue of division of unreimbursed health care expenses and its effect, if any, on the financial orders.

In this opinion the other judges concurred.

