ANNA ELIA *v.* FRANCO ELIA
(AC 27080)

Schaller, McLachlan and Harper, Js.

Argued December 4, 2006—officially released March 6, 2007

*Christopher P. Norris*, with whom was *William R. Donaldson*, for the appellant (defendant).

*M. Katherine Webster-O'Keefe*, for the appellee (plaintiff).

*Opinion*

McLACHLAN, J. The defendant, Franco Elia, appeals from the judgment of the trial court dissolving his marriage to the plaintiff, Anna Elia. The defendant claims that the court improperly (1) determined the plaintiff's earning capacity for purposes of child support, (2) determined his earning capacity for purposes of child support, (3) failed to deduct his mandatory union dues from gross income for purposes of child support, (4) ordered that the marital home be sold and (5) failed to address the legal effect of a postnuptial agreement. We affirm the judgment of the trial court.

The court dissolved the parties' nineteen year marriage on October 11, 2005. At the time of the dissolution, the parties had three minor children, aged fourteen, thirteen and twelve. The court found that the marriage had broken down irretrievably and attributed fault to both parties. The court accepted the "completely balanced parenting plan" submitted by the parties, which provided for joint legal and physical custody of the minor children. The court ordered, inter alia, that the defendant pay to the plaintiff $200 per week in child support. In addition, the court ordered that the marital

home be sold and the proceeds be divided equally between the parties after the payment of certain expenses. The defendant filed a postjudgment motion to reargue, which was denied by the court on October 24, 2005. This appeal followed.

"The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . [T]o conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) *Tracey* v. *Tracey*, 97 Conn. App. 122, 124–25, 902 A.2d 729 (2006).

I

The defendant essentially claims that the court improperly applied the child support guidelines. Specifically, he argues that the court improperly calculated the amount due the plaintiff for support of their three minor children on the basis of facts that do not find

support in the record. He challenges the court's determination of the plaintiff's earning capacity, his earning capacity and the failure of the court to deduct union dues from his gross income.

A

The defendant claims that the court improperly determined that the plaintiff's average gross weekly income was $540 and that her average net weekly income was approximately $415. At the time of trial, the plaintiff testified that she currently was working approximately thirty-nine hours per week and was paid $16 per hour, for a total gross weekly amount of $624. She also testified that she was paid $16 per hour at her previous job, which she had left voluntarily for her then present job. Because of that testimony, the defendant argues that the court could not utilize an income figure below her actual earnings for purposes of child support.

The plaintiff also testified, however, that her hourly rate of pay would be reduced to between $11 and $13 effective November 1, 2005. A letter from her employer was admitted as an exhibit to support that testimony. The reason for the reduction in pay was because the plaintiff failed to obtain her license as a practical nurse, which resulted in a change of her job classification to medical assistant. The court concluded that her income would decrease but also noted the plaintiff's lack of motivation in obtaining her nursing license. For that reason, it determined that the plaintiff had the potential to earn more than $11 to $13 per hour, even without her license, and utilized an average net weekly wage of $415 in calculating the amount of child support.

The defendant, without benefit of case law, claims that a court cannot utilize an income figure below the actual earnings of a party at the time of trial in determining that party's earning capacity. The defendant argues, also without authority, that under the child support

guidelines, a court can only increase the income. The defendant claims that a court looks to a party's earning capacity rather than actual earnings only when it needs to protect children from the voluntary reduction of income by a parent or the failure of a parent to achieve his or her earning capacity in order to avoid parental support obligations. We disagree.

"It is well established that the trial court may under appropriate circumstances in a marital dissolution proceeding base financial awards on the earning capacity of the parties rather than on actual earned income. . . . Earning capacity, in this context, is not an amount which a person can theoretically earn, nor is it confined to actual income, but rather it is an amount which a person can realistically be expected to earn considering such things as his vocational skills, employability, age and health." (Citation omitted; internal quotation marks omitted.) *Weinstein* v. *Weinstein*, 280 Conn. 764, 772, 911 A.2d 1077 (2006).

Although it is true that the court generally increases the actual earned income of a party when it considers that party's earning capacity, there is no statutory provision or case law that precludes a court from decreasing that income under appropriate circumstances. General Statutes § 46b-84 (d) simply provides that in determining the amount of child support in any particular case, a trial court must consider "the age, health, station, occupation, *earning capacity*, amount and sources of income, estate, vocational skills and employability of each of the parents . . . ." (Emphasis added.) Earning capacity is not defined in the statute, but case law is clear that earning capacity is the amount that a person "can *realistically* be expected to earn . . . ." (Emphasis added; internal quotation marks omitted.) *Weinstein* v. *Weinstein*, supra, 280 Conn. 772.

In the present case, the court had evidence before it from which it reasonably could conclude that the

plaintiff's earning capacity was less than her actual income at the time of trial. The plaintiff testified that her hourly rate would be decreased effective November 1, 2005, because she had failed to obtain her license as a practical nurse. A letter from her employer, admitted as a full exhibit at the time of trial, corroborated that testimony. After considering her employment history and her apparent lack of motivation in obtaining her license, the court concluded that her earning capacity was less than her current rate of pay but more than the amount she would be making commencing on November 1, 2005. We conclude, therefore, that the court's determination that the plaintiff's earning capacity was an average gross weekly amount of $540 and an average net weekly amount of $415 was neither contrary to law nor clearly erroneous.

B

The defendant next claims that the court improperly calculated his average gross weekly income and his average net weekly income. Specifically, the defendant argues that the court concluded that he could resume his position as a foreman when the evidence did not support that conclusion and then determined his earning capacity on the basis of that assumption.

At the time of trial, the defendant testified that he had been a union laborer for the past eighteen years. Until early 2004, and for approximately four to five years prior thereto, he was employed as a foreman. As a foreman, he earned an additional $175 per week. Approximately four to six weeks after he and the plaintiff separated, the defendant testified that he relinquished his foreman position because his supervisors " 'weren't satisfied' " with his performance. The plaintiff testified that the defendant told her that it was *his* decision to leave that position, thereby decreasing his earnings. The defendant has not asked to be returned

to the position of foreman since that time and testified that he would not make such a request for "quite a few years."

"[T]he sifting and weighing of evidence is peculiarly the function of the trier [of fact]. [N]othing in our law is more elementary than that the trier [of fact] is the final judge of the credibility of witnesses and of the weight to be accorded to their testimony. . . . The trier has the witnesses before it and is in the position to analyze all the evidence. The trier is free to accept or reject, in whole or in part, the testimony offered by either party." (Internal quotation marks omitted.) *Welsch* v. *Groat*, 95 Conn. App. 658, 664, 897 A.2d 710 (2006).

After hearing the testimony of the parties, the court, as the finder of fact, reasonably could have concluded that the defendant voluntarily left the foreman position shortly after the parties separated, reduced his earnings because of that voluntary relinquishment and made no effort thereafter to return to that position. We conclude, therefore, that the court's determination that the defendant's earning capacity was greater than his current earnings, which did not include additional pay as a foreman, was not clearly erroneous.

C

The defendant next claims that the court improperly failed to deduct his union dues from his gross income in calculating the amount of child support. The defendant argues that his testimony and the exhibits he submitted at trial established that more than $200 was deducted from his paycheck each week as mandatory union dues. According to the child support guidelines, the payment of mandatory union dues constitutes an allowable deduction from gross income.[1]

---

[1] Section 46b-215a-1 (1) of the Regulations of Connecticut State Agencies provides in relevant part: " 'Allowable deductions' means average weekly amounts subtracted from gross income to arrive at net income, and are

The defendant submitted two exhibits to support his claim. They are both copies of pay stubs, one for the pay period May 22 to 28, 2005, and the other for the pay period September 4 to 10, 2005. The first exhibit indicates a deduction of $206.80 for "union" and the second exhibit indicates a deduction of $218.40 for "legal." The defendant's counsel asked the defendant whether "they" take out $218 for the union in his deductions, and he responded in the affirmative. There was no testimony that the deductions were mandatory, and there was no testimony or indication on the exhibits that such an amount was deducted every week. Furthermore, the child support guidelines worksheet submitted by the defendant at trial did not have union dues listed as a deduction.[2]

The record is unclear with respect to the defendant's claim. It is the defendant's burden to provide this court with an adequate record for our review. The court's memorandum of decision makes no mention of union dues, and the defendant did not file a motion for articulation. "It is well settled that [a]n articulation [pursuant to Practice Book § 66-5] is appropriate where the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification. . . . [P]roper utilization of the motion for articulation serves to dispel any . . . ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal. . . . The . . . failure to seek an articulation of the trial court's decision to clarify . . . issues and to preserve them properly for appeal leaves this court without the ability to engage in a meaningful review." (Internal quotation

limited to the following . . . (G) mandatory union dues or fees, including initiation, to the extent deducted by the employer . . . ."

[2] The defendant's counsel indicated at trial that he would submit another guidelines worksheet because he had failed to include a deduction for union dues, but there is no updated worksheet in the file or included in an appendix to the defendant's appellate brief.

marks omitted.) *Chyung* v. *Chyung*, 86 Conn. App. 665, 676, 862 A.2d 374 (2004), cert. denied, 273 Conn. 904, 868 A.2d 744 (2005). It is not the function of this court on review to engage in speculation.

Included in the defendant's argument regarding the failure to deduct union dues is a paragraph claiming that the court deviated from the child support guidelines without first stating the presumptive amount of the weekly support order recommended by the guidelines, as required by *Favrow* v. *Vargas*, 231 Conn. 1, 26–27, 647 A.2d 731 (1994). We note that the defendant did not brief that claim separately, nor did he indicate that this was an issue on appeal. See Practice Book §§ 67-1, 67-4 (a) and (d).

In its memorandum of decision, the court found that the application of the child support guidelines would be inequitable in this case because of the shared parenting plan submitted by the parties and approved by the court. It concluded that it was appropriate to deviate from those guidelines and ordered the defendant to pay the plaintiff $200 per week as child support for the benefit of the three minor children. In reaching that figure, the court previously had determined that the plaintiff's average gross weekly income was $540 and her average net weekly income was $415. The court further determined that the defendant's average gross weekly income was $1535, and his average net weekly income was $1214.

The plaintiff argues that once the court made a determination of the net incomes of both parties, the guidelines then mandated the presumed child support amount, and the omission of that number in the decision had no effect on the judgment. Further, the plaintiff claims that, utilizing the amounts dictated by the guidelines, the court's order actually was within 9 percent

of the guidelines amount, i.e., it was within the parameters of the guidelines. We agree.

From the court's determination of the parties' incomes for purposes of calculating child support, which we concluded was done properly, it appears that the court did not deviate from the child support guidelines. The defendant has offered no evidence, argument or analysis from which we could conclude otherwise.

## II

The defendant's remaining claims are addressed to the court's order relative to the sale of the marital home and the court's failure to address the legal effect of a document signed by the parties at the time they separated.[3] We decline to address those claims, as they have been briefed inadequately.

"[F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. . . . [A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims." (Internal quotation marks omitted.) *Russell* v. *Russell*, 91 Conn. App. 619, 634–35, 882 A.2d 98, cert. denied, 276 Conn. 924, 925, 888 A.2d 92 (2005).

---

[3] The court's memorandum of decision makes no mention of the signed document, and the defendant failed to file a motion for articulation to provide this court with an adequate record to permit review of that claim.

The defendant cites no statute or case law to support his arguments. He makes a mere assertion of error. No standard of review has been identified. Because of the lack of analysis provided by the defendant, we decline to afford those claims review.

The judgment is affirmed.

In this opinion the other judges concurred.