ROBERT B. GOLDEN *v.* LISA J. MANDEL
(AC 28866)

Gruendel, Robinson and Peters, Js.

---

Argued April 21—officially released September 23, 2008

*Samuel V. Schoonmaker IV*, for the appellant (defendant).

*Hilary B. Miller*, for the appellee (plaintiff).

*Opinion*

ROBINSON, J. The defendant, Lisa J. Mandel, appeals from the judgment of the trial court dissolving her marriage to the plaintiff, Robert B. Golden. On appeal, she claims that the court improperly (1) found that she made no contribution to the acquisition, preservation or appreciation of certain marital assets and (2) entered

financial orders that were not supported by the evidence. We disagree and affirm the judgment of the trial court.

The court found the following facts. The plaintiff and the defendant were married on March 21, 1993, in New York. They have two minor children of the marriage, one born in 1996 and the other in 1998. At the time of the dissolution, the plaintiff was fifty years old and the defendant was forty-five years old. The plaintiff is employed by Time Warner Cable, Inc., as a director of business affairs with a gross annual base salary of $128,750 per year; he received a bonus of $29,134 in March, 2007, for the 2006 calendar year. The defendant is currently self-employed, on a part-time basis, as a digital media consultant; her gross annual income is approximately $55,000. Both parties are in good health.

The parties jointly own the marital residence, which is located in the Riverside section of Greenwich.[1] In addition to his interest in the marital residence, the plaintiff listed assets on his financial affidavit, including an inherited individual retirement account (IRA), other inherited assets placed in a revocable trust[2] and three pension plans. The plaintiff's financial affidavit listed the value of the revocable trust, net of margin loan, at $1,584,257 and the value of the inherited IRA at $542,917. In addition to her interest in the marital residence, the defendant listed assets that included a 401

---

[1] The parties' stipulation indicates that the residence is located in Riverside, but the defendant in her brief refers to their residence as being in the town of Greenwich. All further references to the parties' residence will be to Greenwich in order to mirror the arguments in the defendant's brief.

[2] The plaintiff testified that his mother died on July 1, 2000, and that he inherited the funds that are in the trust account, as well as the IRA, from his mother. The plaintiff established the Robert B. Golden Revocable Trust on August 28, 2000. The plaintiff further testified that the trust was established for the purpose of keeping the inherited money separate from the defendant's property and that the defendant never had access to the funds in either the trust or the IRA.

(k) account. The court found that both parties were at fault equally for the breakdown of the marriage. Accordingly, the court rendered judgment dissolving the marriage.

In its financial orders, the court ordered that the plaintiff pay $422 weekly child support[3] and $500 weekly periodic alimony to the defendant.[4] The court stated that it considered the various elements set forth in General Statutes § 46b-81 and expressly found no contribution by the defendant to the acquisition, preservation or appreciation in value of the assets inherited by the plaintiff from his mother. The court declined to assign to the defendant any portion of the plaintiff's inherited assets. This appeal followed. Additional facts will be set forth as needed.

I

The defendant first claims that the court improperly found that she made no contribution to the acquisition, preservation or appreciation of certain assets that the plaintiff inherited from his mother. Specifically, she argues that this finding was clearly erroneous.[5]

---

[3] The court also ordered that the parties' "Parental Responsibility Plan" be incorporated into the judgment. The "Parental Responsibility Plan" provided in part that the plaintiff and the defendant have joint legal custody of the minor children and that the children's principal residence would be with the defendant.

[4] The court further ordered that the marital residence immediately be listed for sale and that the parties split the net proceeds equally. All of the contents of the marital home were awarded to the defendant, who, along with the children, was entitled to occupy the premises until the residence was sold. Additionally, the defendant was awarded 50 percent of the plaintiff's second IRA, consisting of money put aside by his employer, which is separate from the inherited IRA. There were also other awards involving life insurance, health insurance and medical expenses for the children.

[5] To the extent that the defendant claims that the court's failure to award her any portion of the inherited assets undermined the equitable division of the parties' assets, we find that the defendant failed to brief this claim adequately. See *Grimm* v. *Grimm*, 276 Conn. 377, 391 n.14, 886 A.2d 391 (2005), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006).

The defendant asserts that she contributed to the acquisition, preservation or appreciation of the inherited assets. She claims that she supported the family during the approximately two year period when the plaintiff was unemployed and that absent her earnings, the family would have been forced to deplete the inherited assets, which have remained untouched for the most part. By virtue of her working while the plaintiff was unemployed, the defendant claims that she contributed to the preservation of the inherited assets.

To address the defendant's claim properly, we must determine whether there was a basis from which the court could have found that the defendant made no contribution to the acquisition, appreciation or preservation of the assets. See *Calo-Turner* v. *Turner*, 83 Conn. App. 53, 55–57, 847 A.2d 1085 (2004). In its memorandum of decision, the court did not provide the basis or explanation for its conclusion that the defendant did not contribute to the acquisition, preservation or appreciation of the assets.[6] The record reveals that the defendant did not seek an articulation of the basis of the court's ruling. "An articulation may be necessary where the trial court fails completely to state any basis for its decision . . . or where the basis, although stated, is unclear." (Internal quotation marks omitted.) *Martin* v. *Martin*, 101 Conn. App. 106, 115 n.3, 920 A.2d 340 (2007). "It is the responsibility of the appellant to provide an adequate record for review as provided in [Practice Book §] 61-10. . . . Conclusions of the trial

---

[6] The court stated that "[i]n considering the various elements stated in General Statutes § 46b-81, the court finds no contribution by the defendant to the acquisition, preservation or appreciation in value of the inherited assets received by the plaintiff as a result of the death of his mother. The court finds no reason to assign the defendant any portion of the plaintiff's inherited assets." Section 46b-81 (a) provides in relevant part: "At the time of entering a decree . . . dissolving a marriage . . . pursuant to a complaint under section 46b-45, the Superior Court may assign to either the husband or wife all or any part of the estate of the other. . . ."

court cannot be reviewed where the appellant fails to establish through an adequate record that the trial court incorrectly applied the law or could not reasonably have concluded as it did . . . ." (Citations omitted; internal quotation marks omitted.) *Bradley* v. *Randall*, 63 Conn. App. 92, 95–96, 772 A.2d 722 (2001). When the trial court does not provide the necessary factual and legal conclusions, either on its own or in response to a proper motion for articulation, any decision made by us respecting this claim would be entirely speculative. See *Calo-Turner* v. *Turner*, supra, 56. Therefore, we decline to review the defendant's claim.

## II

The defendant next claims that the court entered financial orders that were not supported by the evidence. First, she argues that the court abused its discretion by entering financial orders that did not adequately consider the station of the parties and their minor children and the value of the parties' estate. Additionally, she claims that the court improperly entered the awards of child support and alimony without evidentiary support.

"Our standard of review for financial orders in a dissolution action is clear. The trial court has broad discretion in fashioning its financial orders . . . ." *Casey* v. *Casey*, 82 Conn. App. 378, 383, 844 A.2d 250 (2004). "[T]his court will not disturb the trial court's orders unless it has abused its legal discretion or its findings have no reasonable basis in fact. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . [W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, these facts are clearly

erroneous." (Internal quotation marks omitted.) *Guarascio* v. *Guarascio*, 105 Conn. App. 418, 421, 937 A.2d 1267 (2008).

A

We first address the defendant's claim that the court's orders did not properly consider the family's station and the value of the parties' estate. The defendant places particular emphasis on the fact that the court ordered the immediate sale of the family residence, which she alleges would impact her station and that of the minor children. We conclude that the court did not abuse its discretion in formulating the financial awards.

"The most pertinent definition of station in Webster, Third New International Dictionary, is social standing. A person's social standing is strongly correlated to his standard of living, although other factors may be important as well." (Internal quotation marks omitted.) *Blake* v. *Blake*, 207 Conn. 217, 232, 541 A.2d 1201 (1988). Station is one of the many criteria set out in General Statutes §§ 46b-81, 46b-82 and 46b-84 concerning assignment of property and transfer of title, alimony and child support, respectively. "In determining the assignment of marital property . . . or alimony . . . a trial court must weigh the station or standard of living of the parties in light of the other statutory factors such as the length of the marriage, employability, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income." (Internal quotation marks omitted.) *Blake* v. *Blake*, supra, 232; see also 24A Am. Jur. 2d 95, Divorce & Separation § 692 (1998) ("where a spouse who has been living extravagantly and has been accustomed to a standard of living that exceeds the other spouse's means, he or she need not be continued to be supported at such a high standard"). The parties' station is also relevant to the determination of child support awards. See *Blake*

v. *Blake*, supra, 232. Pursuant to § 46b-81, "[t]he trial court is granted the authority . . . to order the sale of the marital home without any act by either the husband or the wife, when in the judgment of the court it is the proper mode to carry the decree into effect." (Internal quotation marks omitted.) *Martin* v. *Martin*, 99 Conn. App. 145, 154, 913 A.2d 451 (2007).

As noted previously, the court ordered alimony in the amount of $500 per week and child support in the amount of $422 per week. The defendant also was awarded 50 percent of the plaintiff's noninherited IRA, which was listed on the plaintiff's financial affidavit as containing $712,916, and all the contents of the marital home, which the defendant estimated to be worth $400,000. In calculating these awards, the court found that the parties "are of the same station, educational level, occupational skills and employability and needs." The court also ordered the immediate sale of the marital residence, which had a fair market value of $2.5 million as of the date of the memorandum of decision, and the net proceeds were to be split equally between the parties.[7]

Once the house is sold, the defendant asserts, she and the children may no longer to be able to afford to live in Greenwich on the alimony and child support awards combined with her weekly gross income from her employment, and this would significantly impact the minor children's station because they have resided in the home since 2002.[8] She claims that the children's

[7] The parties had resided in the marital residence since November 1, 2002, and both parties were still residing in the house as of March 13, 2007, the date of the limited contested trial. The sale of the residence automatically was stayed pending this appeal, and there is no indication that the automatic stay has been terminated. See Practice Book § 61-11.

[8] Notably, the defendant claimed monthly living expenses of $17,301 on the financial affidavit she submitted to the court (only $5325 of which she attributes to the mortgage payments and real estate taxes on the Greenwich residence, which the plaintiff, not the defendant, is paying pending the sale of the residence).

station is correlated with their home, standard of living, schools, activities and friends. Although the defendant argues that she will be unable to afford to live in Greenwich after the marital residence is sold, there is nothing in the record to support her contention that she will be unable to afford to purchase another house in Greenwich after the marital residence is sold and nothing in the record to support her contention that the children will necessarily be uprooted, forced to move to another town and enroll in a different school.[9]

The defendant presented no evidence, and the court made no finding, of housing costs in Greenwich.[10] This court is not a finder of fact. See *Tracey* v. *Tracey*, 97 Conn. App. 122, 129 n.3, 902 A.2d 729 (2006). As we cannot take judicial notice of housing costs in Greenwich, we cannot say that the court abused its discretion in ordering the sale of the marital residence. We are not persuaded by the defendant's contention that she will not be able to maintain a residence in Greenwich on the basis of her current salary and the alimony and child support awards. The record reveals that for the past few years, she has been working only sixteen to twenty hours per week while earning approximately $55,000 per year. "[I]t is well established that the trial court may under appropriate circumstances in a marital dissolution proceeding base financial awards on the earning capacity of the parties rather than on actual

---

[9] This court has rejected the argument that station "refers to the lifestyle or standard of living of the parties during the marriage, *including their commensurate expectations for the education and advancement of their children.*" (Emphasis added.) *Hopfer* v. *Hopfer*, 59 Conn. App. 452, 461, 757 A.2d 673 (2000).

[10] The defendant estimated in her brief that each party would receive approximately $700,070 upon the sale of the house. Implicit in the defendant's argument is that this amount would be insufficient to purchase another residence in Greenwich. As we have no evidence before us of the cost of housing in Greenwich, we cannot determine whether there is any merit to her claim.

earned income." (Internal quotation marks omitted.) *Weinstein* v. *Weinstein,* 104 Conn. App. 482, 489, 934 A.2d 306 (2007), cert. denied, 285 Conn. 911, 943 A.2d 472 (2008). The defendant testified that she received a bachelor of arts degree and that when she was working full-time her salary reached approximately $150,000 per year. The defendant herself acknowledged during trial that she would almost certainly have to go back to work full-time. Under these circumstances, the financial awards were well within the court's discretion, particularly considering the defendant's earning capacity.

Finally, we address the defendant's reliance on *Blake.* The defendant attempts to draw a parallel to the circumstances of the parties in *Blake* v. *Blake,* supra, 207 Conn. 217, in which the plaintiff wife brought only $10,000 in assets to the marriage but was awarded, among other things, the defendant husband's interest in a lot in California worth $375,000 and $1.2 million to enable her to build a home in California comparable to the family's home in Connecticut, at least in part because the parties had clearly enjoyed a high standard of living during their marriage. Id., 230, 232–33. The standard of living, however, was only one factor that the court considered in making its financial award. Id., 233 ("[i]n view of the parties' standard of living, the length of the marriage, and the needs of the children, we conclude that the trial court did not abuse its discretion in its awards of marital assets, alimony and child support").[11] Likewise, here, the parties' station was but one statutory factor

[11] Along the same lines, the defendant advances the argument that the court did not give proper consideration to the value of the parties' estate in relation to their station and asserts that the parties spent assets to maintain their station for two years while the plaintiff was unemployed. It is well established that the parties' estate is defined as the aggregate of the property and liabilities of each. See *Schmidt* v. *Schmidt,* 180 Conn. 184, 192, 429 A.2d 470 (1980). The defendant's argument again pertains to the weight that the court gave this particular factor, and we are not persuaded by her argument.

to be taken into account by the court, and although the court is required to consider all of the statutory criteria, it does not need to reference all of the criteria explicitly in its decision or give each factor equal weight. See *Siracusa* v. *Siracusa*, 30 Conn. App. 560, 567, 621 A.2d 309 (1993).

B

The defendant also contends that the court abused its discretion by issuing child support and alimony orders that were premised on her guidelines worksheet, which did not accurately reflect the parties' net income. We are not persuaded.

"A fundamental principle in dissolution actions is that a trial court may exercise broad discretion in awarding alimony and dividing property as long as it considers all relevant statutory criteria." (Internal quotation marks omitted.) *Cleary* v. *Cleary*, 103 Conn. App. 798, 801, 930 A.2d 811 (2007). Pursuant to Practice Book § 25-30, each party is required to file certain statements during a dissolution or child support matter.[12] The guidelines worksheet is based on net income; weekly gross income is listed on the first line on the worksheet, and the subsequent lines list various deductions, including federal income tax withheld and social security tax. See Regs., Conn. State Agencies § 46b-215a-5b. The guidelines are used by the court to determine a presumptive child support payment, which is to be deviated from only under extraordinary circumstances. See *Aley*

---

[12] These statements include "a sworn statement . . . of current income, expenses, assets and liabilities. . . . Notwithstanding the above, the court may render pendente lite and permanent orders, including judgment, in the absence of the opposing party's sworn statement. . . . Where there is a minor child who requires support, the parties shall file a completed child support and arrearage guidelines worksheet at the time of any court hearing concerning child support; or at the time of a final hearing in an action for dissolution of marriage . . . ." Practice Book § 25-30.

v. *Aley*, 101 Conn. App. 220, 227–28, 922 A.2d 184 (2007).[13]

The defendant claims that the court's awards were in error because they were based on income numbers that were not supported by the evidence and were thus based on incorrect net incomes.[14] After a careful review of the record, we conclude that there is no evidence that the court based the child support or alimony awards on incorrect net income numbers.

The defendant was awarded $422 per week in child support, the precise amount that she requested in her guidelines worksheet and which was $100 per week more than the amount in the plaintiff's guidelines worksheet. Furthermore, prior to trial, the parties filed a stipulation of uncontested matters that the court accepted as true.[15] Among those items to which the parties stipulated was their gross base salaries (the plaintiff $128,750 per year and the defendant $55,000 per year) and payroll withholding for federal income tax

---

[13] "General Statutes § 46b-215b requires the court to consider and to apply the child support and arrearage guidelines (guidelines) to all determinations of child support amounts. Section 46b-215a-2a of the guidelines, as embodied in the Regulations of Connecticut State Agencies, provides procedures for using the child support worksheet . . . to determine the presumptive child support payments and the health care coverage contributions. The presumptive child support payments and health care coverage contributions indicated by the guidelines should be identical to the court's orders for such payments and contributions by the noncustodial parent to the custodial parent pursuant to § 46b-215a-3 of the guidelines unless application of the guidelines is inequitable or inappropriate under the circumstances." (Internal quotation marks omitted.) *Aley* v. *Aley*, supra, 101 Conn. App. 227–28. We note that although § 46b-215a-2a has been repealed, under § 46b-215-2b, the guidelines still create a presumptive support number.

[14] The defendant also claims that the court could not have based its award on the figures contained in her guidelines worksheet because the worksheet was completed prior to the start of trial. The fact that her guidelines worksheet was submitted prior to trial is irrelevant.

[15] A judgment rendered in accordance with such a stipulation is to be regarded and construed as a contract. *Fusco* v. *Fusco*, 266 Conn. 649, 654, 835 A.2d 6 (2003).

(the plaintiff $24,774), social security tax (the plaintiff $7715), medicare tax (the plaintiff $1804), state income tax (the plaintiff $5373) and medical insurance ($5200). In addition, the parties stipulated that the plaintiff received a bonus from his employer of $29,134 in March, 2007, which was subject to withholding for federal income tax ($7284), social security tax ($1806), state income tax ($1457) and medicare tax ($422). The court in its memorandum of decision recited these stipulations before entering the child support and alimony orders.

The court's orders were consistent with both the guidelines worksheet and, more importantly, the stipulations by the parties. To the extent that the defendant argues that the awards were based on unsupported net income numbers, we conclude that this argument is without merit. Although the parties did not explicitly stipulate to net income, the stipulation and the guidelines worksheet both begin with gross income numbers, and both clearly subtract from that number the appropriate deductions, resulting in the parties' net income. The defendant cannot now quarrel with the use of numbers to which she herself stipulated. The court also had evidence before it of the parties' net and gross incomes in the stipulations, the parties' worksheets and the financial affidavits of both parties. See *Kelman* v. *Kelman*, 86 Conn. App. 120, 123–24, 860 A.2d 292 (2004) (where court specifically stated that it took into account relevant statutes, parties' testimony, financial affidavits, and child support guidelines worksheets, court's decision was affirmed), cert. denied, 273 Conn. 911, 870 A.2d 1079 (2005). It follows from the proposition that "a party who fails to submit a child support guidelines worksheet is precluded from complaining of the alleged failure of the trial court to comply with the guidelines"; (internal quotation marks omitted) *Tracey* v. *Tracey*, supra, 97 Conn. App. 129; that a party who himself or

herself submits a child support guidelines worksheet cannot complain when it is relied on by the court. This is particularly true considering that the court is required to rely on the presumptions created by the worksheet unless doing so would create inequitable circumstances.

Furthermore, the defendant makes no argument that special circumstances exist that would permit deviation from the presumptive awards contained in the guidelines. Affording the court every reasonable presumption in favor of the correctness of its decision, we conclude that it did not abuse its discretion.

The judgment is affirmed.

In this opinion the other judges concurred.