LORRAINE A. UTZ *v.* PETER D. UTZ, SR.
(AC 28780)

Gruendel, Harper and Beach, Js.

Argued September 26, 2008—officially released February 17, 2009

*Lori Welch-Rubin*, with whom, on the brief, was *John T. Asselin-Connolly*, for the appellant (defendant).

*John F. Morris*, for the appellee (plaintiff).

*Cynthia L. Desmond*, for the minor children.

*Opinion*

HARPER, J. The defendant, Peter D. Utz, Sr., appeals from the judgment rendered by the trial court dissolving his marriage to the plaintiff, Lorraine A. Utz. On appeal, the defendant takes issue with the court's financial orders and awards, claiming that the court improperly (1) constructed a property division and support award with which he cannot comply, (2) calculated child support, (3) calculated the alimony award, (4) ordered him to pay counsel fees for the children and guardian ad litem, and (5) ordered him to contribute to the plaintiff's counsel fees. We affirm the judgment of the trial court.

The parties were married on August 18, 1990. The court dissolved the parties' marriage by a memorandum

of decision filed on March 29, 2007. At the time of dissolution, the parties had two minor children. The court found that the marriage had broken down irretrievably, and, in addition to a stipulated custody and visitation order, it entered various financial orders. In relevant part, it ordered the defendant to pay to the plaintiff $435 per week in child support, $1 per year in nominal alimony,[1] $1000 per week in periodic alimony[2] and a lump sum alimony payment of $150,000. The defendant also was ordered to pay all counsel fees for the minor children and guardian ad litem, plus make a $50,000 contribution toward the plaintiff's counsel fees. In addition, the court ordered the defendant to transfer to the plaintiff all right, title and interest in the marital home, which the defendant claimed was used to sustain the revenue in his business. The transfer of the home to the plaintiff was under the proviso that the defendant had a ninety day option to buy the home for $750,000. The defendant timely filed a motion to reargue, which the court denied on April 10, 2007. This appeal followed. Additional facts will be set forth as necessary.

[1] The court ordered nominal alimony of $1 per year "until such time as the property settlement [entered by the court was] paid in full and the liens and encumbrances on the [marital home], which the defendant is obligated to indemnify on account of [the property settlement was] paid in full and, or, released, or he exercises his option to purchase the residence and acreage." It further stated that the order of $1 per year alimony would be "modifiable to the extent necessary to ensure that the defendant satisfies all of his obligations" under the property settlement, periodic alimony and lump sum alimony orders.

Nominal alimony, commonly $1 per year, is typical when the court chooses to preserve for a future date the power to ascertain and to determine the appropriate amount of periodic alimony. See *Simmons* v. *Simmons*, 244 Conn. 158, 185–86, 708 A.2d 949 (1998) ("[n]ominal award[s] may often be appropriate . . . to afford the court continuing jurisdiction to make appropriate [alimony] modifications"); *Ridolfi* v. *Ridolfi*, 178 Conn. 377, 379, 423 A.2d 85 (1979) (court entered nominal alimony order of $1 per year to retain power to grant appropriate alimony at a later date).

[2] The court ordered periodic alimony of $1000 per week "until the death of either party, the remarriage of the [plaintiff] or March 31, 2017, whichever shall sooner occur" with the intent that the order "shall be nonmodifiable by either party as to term."

At the outset, "[t]he standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . [T]o conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Elia* v. *Elia*, 99 Conn. App. 829, 831, 916 A.2d 845 (2007).

I

The defendant claims that in order to punish him, the court improperly constructed a property division and support award with which he cannot comply.[3] Specifically, to support his argument, the defendant asserts

---

[3] The defendant asserts that the financial awards and orders were intended to punish him for his alleged "litigation misconduct" during the marriage dissolution. Some examples of the alleged "litigation misconduct" consisted of the following: (1) the defendant's execution of a second promissory note and mortgage on the marital home to defraud the court and the plaintiff; (2) the defendant's absorption of 100 percent of the costs of a business, in which he was a 50 percent shareholder; (3) the defendant's sale of certain assets to his brother; (4) the defendant's inconsistent reporting of income to the court; and (5) the defendant's motives in making a custody claim in the final hour of trial.

that the court's order of $1 per year nominal alimony to ensure that he meets his financial obligations is evidence of the court's knowledge that he would be unable to comply with the court's financial order. We disagree.

As previously stated, "[t]he standard of review in family matters is that this court will not disturb the trial court's orders unless it has abused its legal discretion or its findings have no reasonable basis in fact. . . . [W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, these facts are clearly erroneous." (Internal quotation marks omitted.) *Szegda* v. *Szegda*, 97 Conn. App. 426, 432, 904 A.2d 1266, cert. denied, 280 Conn. 932, 909 A.2d 959 (2006).

The defendant's claim is directed at the court's implied finding that he could satisfy the financial order. A party's ability to pay is a material consideration in formulating financial awards. See *Greco* v. *Greco*, 275 Conn. 348, 361, 880 A.2d 872 (2005). Here, the court expressly found that even though the defendant "manipulated his financial situation and asset structure," the defendant's "total estate approache[d] $2.5 million." Nonetheless, the defendant argues that the $1 per year nominal alimony is evidence that the financial order was impossible to comply with. We are unpersuaded.

In *Ridolfi* v. *Ridolfi*, 178 Conn. 377, 379–80, 423 A.2d 85 (1979), our Supreme Court upheld an order for the husband to pay the wife alimony of $1 per year because the husband's future earning capacity was uncertain, and the court wanted to preserve for a future date the power to ascertain and to determine an appropriate amount of periodic alimony. Our Supreme Court concluded that under those circumstances, the $1 per year alimony award was well within the ambit of the court's

discretion. Id., 380; see, e.g., *Zern* v. *Zern*, 15 Conn. App. 292, 294, 544 A.2d 244 (1988) (court issues $1 per year alimony to provide contingency for defendant being ill and unable to work); see also *Sands* v. *Sands*, 188 Conn. 98, 99, 102–103, 448 A.2d 822 (1982) (court's decision to award $1 per year alimony upheld as part of court's general equitable power), cert. denied, 459 U.S. 1148, 103 S. Ct. 792, 74 L. Ed. 2d 997 (1983).

In the present case, the court's decision to order $1 per year alimony to the plaintiff is not conclusive evidence that the court intentionally imposed an impossible financial order to punish the defendant. To the contrary, the court's decision to maintain its jurisdiction on any future modifications of the periodic alimony award is well within its discretion. The defendant does not challenge the court's finding concerning the value of his assets. Therefore, his claim of inability to pay the alimony award is a mere assertion of error without any legal support or showing of how the court's order is without a factual or legal basis. We conclude that the court did not abuse its discretion when it constructed the property division and support award.

## II

The defendant next claims that the court improperly calculated child support. Specifically, the defendant argues that the court improperly used a 20 percent tax rate as a form of punishment[4] to calculate his income. We disagree.

"A fundamental principle in dissolution actions is that a trial court may exercise broad discretion in awarding alimony and dividing property as long as it considers all relevant statutory criteria. . . . Pursuant to Practice Book § 25-30, each party is required to file certain statements during a dissolution or child support matter.[5]

---

[4] See footnote 3.

[5] These statements include "a sworn statement . . . of current income, expenses, assets and liabilities. . . . Where there is a minor child who

The [child support] guidelines worksheet is based on net income; weekly gross income is listed on the first line on the worksheet, and the subsequent lines list various deductions, including federal income tax withheld and social security tax. . . . The guidelines are used by the court to determine a presumptive child support payment, which is to be deviated from only under extraordinary circumstances."[6] (Citations omitted; internal quotation marks omitted.) *Golden* v. *Mandel*, 110 Conn. App. 376, 386, 955 A.2d 115 (2008).

In the present case, the defendant submitted to the court a financial affidavit and a child support guidelines worksheet to determine his gross and net income that were based on tax rates ranging from 10 to 20 percent. He cannot in turn complain when the court actually relies on the information he has submitted.[7] See id., 388–89. In addition to the court having the financial affidavits and a guidelines worksheet submitted by each

requires support, the parties shall file a completed child support and arrearage guidelines worksheet at the time of any court hearing concerning child support; or at the time of a final hearing in an action for dissolution of marriage . . . . Practice Book § 25-30." (Internal quotation marks omitted.) *Golden* v. *Mandel*, 110 Conn. App. 376, 386 n.12, 955 A.2d 115 (2008).

[6] "General Statutes § 46b-215b requires the court to consider and to apply the child support and arrearage guidelines (guidelines) to all determinations of child support amounts. Section 46b-215a-2a of the guidelines, as embodied in the Regulations of Connecticut State Agencies, provides procedures for using the child support worksheet . . . to determine the presumptive child support payments and the health care coverage contributions. The presumptive child support payments and health care coverage contributions indicated by the guidelines should be identical to the court's orders for such payments and contributions by the noncustodial parent to the custodial parent pursuant to § 46b-215a-3 of the guidelines unless application of the guidelines is inequitable or inappropriate under the circumstances. . . . We note that although § 46b-215a-2a has been repealed, under § 46b-215a-2b, the guidelines still create a presumptive support number." (Citation omitted; internal quotation marks omitted.) *Golden* v. *Mandel*, 110 Conn. App. 376, 387 n.13, 955 A.2d 115 (2008).

[7] The record reflects the court's difficulty in calculating the defendant's net and gross income because the defendant inconsistently reported his revenue and debt on various sworn financial affidavits.

party, there was ample evidence, both documentary and testimonial, before the court to calculate the defendant's net and gross income. In the memorandum of decision, the court found that "[o]n several of the defendant's financial affidavits, *he indicates a 20 percent tax rate*; therefore, the court finds his net yearly income to be $156,000 and his net weekly income to be $3000." (Emphasis added.) The defendant never provided the court with evidence to the contrary. On the basis of our review of the record, we find no abuse of discretion.

### III

Next, the defendant claims that the court improperly calculated the alimony award. Specifically, the defendant contends that (1) the alimony award serves no rehabilitative purpose because it exceeds the plaintiff's needs and (2) the alimony award and property division results in a calculation that is "double dipping" into his main source of income. We will address each contention in turn.

### A

The defendant first argues that the court improperly granted the plaintiff an alimony award that exceeded her needs because it defeats the rehabilitative purpose of the award. We disagree.

"[General Statutes §] 46b-82 governs awards of alimony. That section requires the trial court to consider 'the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to [General Statutes §] 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment' in ordering either

party to pay alimony to the other. . . . In particular, *rehabilitative alimony, or time limited alimony,* is alimony that is awarded primarily for the purpose of allowing the spouse who receives it to obtain further education, training, or other skills necessary to attain self-sufficiency. . . . Rehabilitative alimony is *not limited to that purpose,* however, and there may be other valid reasons for awarding it." (Citations omitted; emphasis added.) *Bornemann* v. *Bornemann,* 245 Conn. 508, 539–40, 752 A.2d 978 (1998).

In the present case, the court expressly awarded the plaintiff a time limited award of alimony "[b]ased upon the statutory factors, including the age, education, earnings and work experience of the plaintiff . . . ." The defendant argues that considering the rehabilitative character of a time limited alimony award, the court defeated the award's purpose because it did not provide the plaintiff with any incentive to work when the award exceeds her needs. Nonetheless, as noted in *Bornemann,* the court may order a time limited alimony award for valid reasons other than self-sufficiency. The defendant has not presented any further arguments to demonstrate that the court abused its discretion. Therefore, on the basis of our review of the record, we conclude that the court did not abuse its discretion by awarding the plaintiff alimony that was not limited to a rehabilitative purpose.

B

Last, the defendant argues that the court improperly granted the plaintiff an alimony award that is "double dipping" into his main source of income as a result of the court's having made a property division of that same source of income. We are unpersuaded.

The defendant argues that because the court ordered ownership of the marital home to the plaintiff, he is unable to continue his daily business because he no

longer has access to the equity line of credit from the home. The defendant asserts that he uses the equity line of credit from the home to generate revenue for his business. He further argues that the court's decision to take into account his business in both the property division and alimony award results in "double dipping" because the business is his only significant stream of income that he can use to meet the court's alimony order.

The defendant cites *Greco* v. *Greco*, supra, 275 Conn. 361, in which the court noted that one's ability to pay is a material consideration in formulating financial awards. Our Supreme Court in *Greco* disagreed with a "double dipping" argument where the husband's business, his main source of income, was transferred to his wife but also was taken into account in the court's order for the husband to pay his wife alimony. Id., 357 n.8. Unlike the husband in *Greco*, in the present case, the defendant still owns his business, and no restrictions have been placed on his ability to get a line of credit using the business as security. In addition, the defendant did not present any legal basis for the court to consider as to why the home equity loan is the only viable credit line for the business. Therefore, we will not entertain such a claim here. We conclude that, on the record before us, the court did not abuse its discretion.

IV

Next, the defendant claims that the court improperly ordered him to pay fees for the children's counsel and for their guardian ad litem to punish him for being litigious during the marriage dissolution. We disagree.

The statutory authority for the award of counsel fees is found in General Statutes § 46b-62.[8] Section 46b-62

---

[8] We note that although § 46b-62 addresses only the issue of attorney's fees, we previously have recognized that the same criteria properly informs the court's exercise of discretion regarding fees for a guardian ad litem

provides in relevant part: "If, in any proceeding under this chapter and said sections, the court appoints an attorney for a minor child, the court may order the father, mother or an intervening party, individually or in any combination, to pay the reasonable fees of the attorney. . . ." "The court may order either party to pay the fees . . . pursuant to . . . § 46b-62, and how such expenses will be paid is within the court's discretion. . . . An abuse of discretion in granting . . . fees will be found only if [an appellate court] determines that the trial court could not reasonably have concluded as it did." (Citation omitted; internal quotation marks omitted.) *Lamacchia* v. *Chilinsky*, 79 Conn. App. 372, 374–75, 830 A.2d 329 (2003).

"The order for payment of . . . fees under . . . § 46b-62 requires consideration of the financial resources of both parties and the criteria set forth in . . . § 46b-82. . . . Section 46b-82 instructs the court to consider, inter alia, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties. . . . Although the trial court is not required to find expressly on each of the § 46b-82 factors, it must have sufficient evidence to support each factor." (Citations omitted; internal quotation marks omitted.) Id., 376.

In the present case, the record provides ample evidence to support the court's order to allocate all costs to the defendant, in light of the fact that he had a higher earning capacity than the plaintiff. See part V. Accordingly, we conclude that the court did not abuse its discretion in ordering the defendant to pay the outstanding counsel fees for the children and guardian ad litem.

appointed for a minor child in a dissolution of marriage action or in an action seeking a modification of custody and visitation. See *Ruggiero* v. *Ruggiero*, 76 Conn. App. 338, 347–48, 819 A.2d 864 (2003); *Roach* v. *Roach*, 20 Conn. App. 500, 508, 568 A.2d 1037 (1990).

## V

Last, the defendant claims that the court improperly ordered him to contribute to the plaintiff's counsel fees, on the basis of his litigation misconduct.[9] We disagree.

As previously noted, "§ 46b-62 governs the award of counsel fees in dissolution proceedings. It provides in relevant part that the court may order either spouse . . . to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in [§] 46b-82. . . . Courts ordinarily award counsel fees in divorce cases so that a party . . . may not be deprived of his or her rights because of lack of funds. . . . Whether to allow counsel fees and in what amount calls for the exercise of judicial discretion. . . . An abuse of discretion in granting the counsel fees will be found only if this court determines that the trial court could not reasonably have concluded as it did." (Internal quotation marks omitted.) *Racsko* v. *Racsko*, 91 Conn. App. 315, 327, 881 A.2d 460 (2005); see also part IV.

In the present case, the record supports the finding that the plaintiff lacked sufficient liquid assets with which to pay her counsel fees. In addition, even if the plaintiff had sufficient liquid assets, the court made a finding that to "require the plaintiff to pay all of these fees from her portion of the marital assets awarded to her by virtue of this memorandum of decision would undermine the purposes of it . . . ." See, e.g., *Eslami* v. *Eslami*, 218 Conn. 801, 820, 591 A.2d 411 (1991) (court uniquely qualified to determine whether financial award would be undermined by rejecting wife's request for

---

[9] The defendant also claims that the court improperly entered a modified order for him to pay the plaintiff's appellate counsel fees. Because the defendant has failed to brief this issue, we decline to afford it review. See *Elia* v. *Elia*, supra, 99 Conn. App. 838; see also footnote 3 (discussing examples of "litigation misconduct").

counsel fees and expenses). Therefore, although the court characterized the defendant's behavior as "litigation misconduct,"[10] the record reflects that the defendant's behavior during litigation was not the focal point for the court's decision. Accordingly, we conclude that the court did not abuse its discretion in ordering the defendant to contribute to the plaintiff's counsel fees.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[10] The defendant argues that because his conduct did not rise to the level of behavior cited in *Ramin* v. *Ramin*, 281 Conn. 324, 915 A.2d 790 (2007), the court improperly ordered him to contribute to the plaintiff's counsel fees due to his conduct. Pursuant to *Ramin*, the court can determine financial orders by reallocating the burden for the increased fees to the party responsible for causing them. See id., 358.